Good morning, Your Honors, and may it please the Court. I'm Erin Trodden on behalf of Isaac Martinez-Chavez. The disputed issue at trial in this case is whether Mr. Martinez-Chavez knew there were guns in the car he was driving. The District Court made two related errors that weighted the scales improperly in the government's favor with respect to this issue. First, it permitted the government to make improper argument in closing, and second, it refused to give an adverse inference instruction based on the government's foliation of evidence. With respect to the government's improper argument in closing, the government agrees that by calling Mr. Martinez-Chavez's sole witness, Olman Vallejos, a liar, and by arguing that the law enforcement in this case was important to law enforcement, and that they were professionals who were protecting the community, and to that end, the jury should convict, the government made improper arguments, and as to the liar comment, that they were plainly so. These arguments deprived Mr. Martinez-Chavez of a fair trial. Can I just ask on that point, maybe it doesn't matter because they've agreed to it. It strikes me as odd in this scenario where the person being described as a liar was an admitted liar, like everybody acknowledged he was a liar. He said he had lied. It seems odd to not be able to say that he was a liar. I presume you would think it would have been fine if they said he admitted that he lied, or that everybody saw that he lied. Why do we think the use of the word liar, which seems to be exactly the same idea? I know our courts, we have said this before, and the government's admitted it, and so I don't want to belabor it, but it seems particularly unusual in this scenario where there wasn't a debate. I mean, most of the cases where we have this come up, you know, it's like the government's suggesting that they're a liar based on inferential evidence, but like there's not a dispute that he was a liar. I think there was a dispute that he was a liar. I think there's a very different valence between liar and confused, and I think certainly counsel recognized that he was not an ideal witness. I did meet or I didn't meet? You think he was confused about that? As I pointed out in the briefing, it's unclear whether he understood what was meant by the defense team, and I don't want to belabor this either, because I do think that this is beside the point now that the government has conceded this, but certainly no one admitted that he was a liar. This court has recognized that the liar comment is problematic. Liar has a very different valence than simply saying the witness is confused, or the witnesses has difficulty remembering, or the witness is not credible, and I disagree with you. Do you think it would have been improper if the government had said, as I sort of took the defense lawyers to say, that the witness lied? Yes. You think that is also improper? Yes. This court has recognized that that's improper on multiple occasions, and the reason that it's improper is because saying that a witness is a liar on the stand is very different than saying this witness isn't credible. It's accusing the witness of committing a crime, and in fact the government explicitly did that in argument here at JA 1168 regarding Mr. Vallejos' testimony. They said, that's what we call perjury. That's lying under oath about an important matter. Now this court has recognized that one of the concerns that arise when the prosecution calls someone a liar is the inference that that the prosecutor has information that's outside of the jury's knowledge. Is that concern really present here? And I understand what you're saying about the government conceding that this was improper, but some of the same issues show up in whether it really had a me that the most obvious inference by kind of a mile would be that the prosecutor was referring to what the jury had just heard from this witness? I think they are, but I think it's the that's what we call perjury. We, the government, we who are who are aware of such things, we who are in charge of law enforcement, are looking at him and we're telling you that man committed a crime right in front of you, and you members of the jury are witnesses to it. The other reason that this is problematic. Why is that? Tell me why that's problematic. Except for a second that it's true that he lied about a material matter and that is indeed perjury. Like what, why is that, you know, taking it as Judge Harris correctly puts it in the why this, you know, misinforms or misleads or in misinfluences, to make up a word, the jury. What, why, why is that what seems to be a very truthful statement to me that he did lie, it was about a material matter, and that is under law. Whether you're law enforcement or defense lawyer, that's called perjury. Of course, I've recognized that the jury is the one who makes that decision, not the prosecutor. The prosecutor doesn't get up. No, no, that's just like a statement that we call lying about a material matter perjury. I would disagree with that, Your Honor. Maybe that's a problem because I'm down here and you're up there. But I think that there is more to perjury than that, and I think that as I briefed, there are certainly concerns about how much Mr. Vallejos understood and how confused he was. But the other problem with the government's statement is that they are tying what Mr. Vallejos said to the defendant. Mr. Vallejos was the only defense witness, and what the government argued was there are only two people who know whether Mr. Vallejos was in the car. One of them was Vallejos, the liar, and the other person is the defendant. So not only is the government arguing, that's at J.A. 1172, not only is the government arguing that Mr. Vallejos is a liar and a perjurer, which is improper under this court's precedent, but also that the defendant, Mr. Martínez Chávez, is implicated in that. They're drawing a direct line between him and Vallejos and essentially accusing him of being part of that and implicating him in that, and that is also prejudicial. The Fifth Circuit said in Garza, you can't throw a skunk into the jury box and expect the jury not to smell it. And I think this is the skunk in the jury box. Part of the problem... But is that a reference to the statement or is that a reference to calling someone who is a liar? Who's throwing the skunk? In that example? Excuse me, Your Honor, I'm sorry. In that example, who's throwing the skunk? The government, Your Honor. By calling him a liar and a perjurer and by linking those crimes to Mr. Martínez Chávez. It's kind of like, as I understand your argument, where I see it, that a person who lies, then you lie. But to call someone a liar is to say more about who they are. Like, for example, a person could be, have a criminal record, but then they say, he's a criminal. Well, you say, that's true because you did commit a crime. Yeah, but to say a person is a criminal carries a different meaning than it was. That's, yeah, I understand your argument, that basically you're branding the person that said, you're a liar, meaning the proof is not even in you. Yeah, that's what, yeah. Exactly, Your Honor. And I think the other reason that these arguments have such sting is, with respect to Mr. Vallejos, is because he isn't a perfect witness. Because the jury is having to hear his testimony and think, what do we make of this? Does this get us to reasonable doubt, which is really what they have to determine here? And by arguing that he is a liar and a perjurer, and that not only is he, but that the defendant is implicated in that, the government tips the scales. The government pushes this over the edge in a way that is prejudicial to him. Now, the other prejudicial comment, and this is the comment that was objected to, was the argument that this was important to law enforcement, that they were professionals, and that the jury should consider their protection of the community in convicting Mr. Martinez-Chavez. And this is improper and prejudicial in several different ways. First, the fact that it may or may not be important to the law enforcement officers is of no moment whatsoever to the jury. It's completely irrelevant. There's a false equivalence that the judge applies between, well, it's important to the defendant, it's important to the government. But the defendant has constitutionally protected interests here. The government doesn't. And asking the jury to consider the importance to the government is a little bit like asking the jury to consider that the government thinks this guy is guilty, or that the government has indicted the defendant. Similarly, the protecting communities comment or argument raises the same concerns that this court has articulated in other cases where the jury is being asked to make policy decisions and to consider the case based on factors outside of the evidence in the case. And I think particularly difficult here as well is the professionals comment. Because the issue in the case really related to whether or not the officers, especially Officer Hilton, because he's the only one there for all of the significant events, whether his testimony and whether his recollection of these events was reliable. Saying that these officers are professionals is equivalent to saying, these guys know what they're doing. They would not make the mistakes that the defendant is alleging. In connection with that, can I ask you about the district court's curative instructions? Because I think it was during this colloquy where the judge says, I will be giving curative instructions. And the judge does instruct the jury, make your own credibility determinations, and in particular, do not give the testimony of law enforcement officers any special root. And we have held in the past that that kind of somewhat generic instruction can do the trick. So why doesn't it resolve the concern here? For two reasons. I think generally, the fact that it's a general instruction rather than a particular instruction in response to this comment matters. More significantly, the jury understands that the judge is going to rein in the government when the government goes astray in closing, because that happened earlier, where the government made an improper argument and essentially testified, defense objected, and the government immediately, or the judge, immediately reined in the government and said, prosecution may not testify. That didn't happen here. The objection was overruled, and the government- I totally, I do understand that point, and you make that point in your brief too. It just seems somewhat counterintuitive. Like if the defendant had lost all of his objections, then we would have less of a problem. But because the district court, totally on the mark, is sustaining some of the defendant's objections, that means this becomes more prejudicial. Kind of weird incentives we're putting out into the world. I think that it would still be prejudicial. I think I would be making the same argument, because I do think the fact that the district court didn't correct it at the time is problematic, that it was not targeted at this particular comment when it was subject to an objection. I understand what your point is about the incentives, but I do think as a practical matter, that's what the jury is taking from this. If we see the court correct the government on one point and not on another, we assume that the other point is fine and worthy of the jury's consideration. One other point with respect to the improper arguments, and that is that the government relies heavily on the strength of their case otherwise, and contends that none of this matters because the government's case is strong otherwise. Courts, though, looking at these cases where they have generally found that despite the improper comments, the case doesn't merit reversal, in all of the cases that the government relies on for that, there is independent evidence that the court is relying on, apart from the bolstered law enforcement testimony or the challenged credibility testimony. For example, in this court's decision in Lopez, the proof of guilt centered on independent DNA evidence, and the improper comment there didn't really change the situation. In this court's decision in Woods, where the defendant was accused of lying under oath, the court said there's plenty of other evidence, competent evidence, apart from this testimony. In the court's decision in Craddock, where the government vouched for government witnesses, the court noted that many other witnesses, apart from those witnesses, could say that the defendant possessed a gun. It's not for me. Is it disputed? I thought the evidence here is that the defendant is the driver and only occupant of the car with the gun in plain view. I mean, doesn't that count as independent evidence, or is that disputed? Well, it's not disputed that he was the driver of the car and that the guns were there. And the gun was there. I see my time is up. May I respond? You may. Yes. First of all, the government didn't rely solely on that. The government pointed to all of this other evidence. But that evidence is unaffected by the, I mean, it is independent evidence. It is independent evidence, but it's not very strong independent evidence, especially given the testimony of Mr. Vallejos. This is in some ways akin to the Fifth Circuit's decision in Aguilar, which was the case involving the ambulance with the hidden compartment full of marijuana. The law enforcement agents testified that the defendant had confessed. The defendant said he hadn't confessed. There was some other kind of circumstantial evidence in that case that suggested that he might have known about the marijuana. But the Fifth Circuit ultimately said that evidence doesn't carry the day. When you take out the disputed confession, the rest of this isn't sufficient. And we would argue this is a similar position. Thank you, Your Honor. Thank you, Mr. Tarullo. Mr. Jones? Good morning, Your Honors, and may it please the Court. My name is Jonathan Jones, and I'm here on behalf of the United States. Your Honors, I'd like to start with the issues related to the closing argument and then move, if possible, to any questions related to the adverse inference instruction that was requested by the defense here. Beginning where my opposing counsel ended, I want to talk specifically about the evidence in this case and the fact that there was straightforward and overwhelming evidence of guilt, even if you set aside the statements from Officer Hilton from the earlier part of the traffic stop. What we have in terms of evidence that is largely undisputed are the facts that Judge Harris, you mentioned. Specifically, it was Mr. Martinez-Chavez's car. He was the only occupant in the car. There was a gun in plain view on the floorboard. He was the only occupant when the car was stopped, yeah. Correct. He was the only occupant when the car was stopped, but in addition, the photographs in the body cam made clear that the car was full of other stuff, such that nobody could have been sitting on that front seat. It was covered with tools and a battery charger, indicating that there was nobody else there. In addition, they found two .22-caliber firearms in the car, and in the center console, there was .22-caliber ammunition that their alibi witness never claimed. Beyond that, we have the statements from Mr. Vallejos himself, and these are captured on the body cam, where his door is open, somebody comes out of the house, and he is begging that person to close the door. So when you put all of that together, even when you set aside some of the earlier testimony from Officer Hilton, which I'll point out is corroborated by other evidence as well, there's clear and straightforward evidence of his guilt in this case. So when we take that as a starting point, and we look here, and we see that we have a straightforward and overwhelming case of guilt, and then that their only alibi witness was frankly incredible. Now, we have acknowledged that it was improper to call him a liar. When we look at the context of how that statement arose— Yeah, there's no case—it's interesting. You just gave us a scenario that I would call colloquially the closed and shut case. Then why is it necessary to call him a liar? I mean, you represent the United States. You're able counsel. You have this ironclad case. Why do you try to put a cherry on top and to say that he's a liar? I don't understand that. As an officer of the court and prosecuting these cases, why is that necessary? Your Honor, it was not necessary here for the prosecutor to call him a liar. I think we acknowledge that. We certainly admit that that was improper. That was a step too far. So, counsel, I mean, I guess building on Judge Gregory's question, we have been so clear about this, you know, whatever else you do in a closing argument, just don't call the defense witness a liar. And I do have a concern that if we don't eventually enforce that rule by reversing a conviction, it's just—I mean, it becomes kind of meaningless. Your Honor, I have a couple of responses to that. First of all, I will point out that under this Court's prior decisions, the question here is not how do we punish the government. The question here is whether Mr. Martinez-Chavez's rights were violated and specifically whether the outcome was going to be different. Well, I agree that that is a big question in this case, but I do have a concern about whether our repeated opinions establishing what ought to be a very easy-to-follow bright-line rule, you know, at what point they stop being meaningful. Your Honor, the other thing that I will point out is that the last case from this Court where it rules on this question, at least as far as the parties have cited it and as far as the government has found, is from 2013. So that's roughly 13 years ago. This is not an issue that's being litigated every session in front of this Court. In the thousands of cases that are tried within this circuit, this is not a routine problem. If what we're seeing here is that once every decade we have a prosecutor that takes a step too far and says liar when he shouldn't say liar, then I don't think that this is a problem where the Court feels the need to specifically go out and punish the government to try and reign it in. I think what the Court needs to look at here is the specific question that's been laid out in its prior precedent, and that's specifically, was this actually prejudicial to Mr. Martinez-Chavez? And when we look at the entirety of the context here, it's an open and shut case. It is clear and straightforward that he knowingly possessed the firearm. His only alibi witness is somebody that was not credible. And again, you don't have to take my word for it, because the District Court specifically made that finding during sentencing. She specifically said, I do not find him credible, and that would not be a surprise. That finding is not a surprise to anybody that was in the courtroom. So— That finding is not a surprise at all. In any case, many times the Court trial judges make decisions as to credibility. That's all that has. Nothing rare about that at all, but the fact that you equate lack of credibility or finding of not credible to being a liar, and that's the problem. Systemically, if you don't get that lesson, you're going to be right in the same place. Oh, Judge said you're not credible, so that equals liar. And it doesn't. It doesn't. It doesn't. Your Honor, I don't necessarily—I don't agree that— No, wait. Stop right there. It doesn't. Liar does not equal lack of credibility. I agree with that. No, vice versa. In other words, being not credible doesn't mean you're a liar. I agree with that, Your Honor. I think that's right, Your Honor, and that's why we agree in this instance the prosecutor went a step too far. But the fact that he was not a credible witness is important for this Court's determination of whether there was actually prejudice here, whether there was a tendency to mislead, whether the outcome would have been different had he not been called a liar. And I want to be clear, both with respect to the liar comment and with respect to the other comments about this being important to the government, the fact that the officers are professionals, if you remove all of these statements from the closing argument, these handful of four or five sentences from 21 pages of the closing argument, and you have the rest of the evidence that came into this case, you have the rest of the arguments made by defense, you have the alibi witness testimony from Mr. Vallejos, there's no reason to believe that the outcome is different because the evidence is overwhelming and because— Here again, you're saying the outcome is overwhelming. Now, why then do you need it to—what's it called? Leaning on the shield. In other words, well, let me make sure now. You know this is important to law enforcement. And based on what you're saying, that not finding guilt here is undermining what our— and I agree with my brave and very heroic officers every day that protect us do. I agree with all the special statements. But is there a place to sort of say now that ought to tip even more why you should bring back a verdict that's inconsistent with supporting that? That's basically what that means. Did I get anything wrong in that? Your Honor, I think that's a fair characterization of what the prosecutor here said. And we agree that that was a step too far. That's not something that he should have said, and that was improper here. So can I just ask about that part? I mean, I think there are things that are improper. I wonder about that part, though. Was there an instruction—I don't remember in this case. Oftentimes, at least in my experience, district court judges would include in their instructions in criminal cases something to the effect of this case is important to the government for enforcing laws as a primary responsibility, and the case is also important to the defendant because he's been charged with a serious crime. That was a sort of standard instruction, at least in some federal district courts. Was that instruction given here? And do you think that such an instruction would be improper? Your Honor, that instruction was not given here, or there was no instruction similar to that given here. In response to the second part of your question, I would want to see the specific language of any such instruction. I would have concerns to the extent that the jury is specifically being told that they can consider, or if anything suggests to the jury that they can consider, whether or not this is important to the government as part of their calculus in finding guilt. As long as the point would be—I mean, that instruction sort of says, listen, this is a case that's important to the government, it's important to the defendant, so you have to decide it. It's not about who it matters to more, it's about what's before you. It seems like that's not what was done here. I'm not suggesting that, but it just struck me as like a common sort of instruction that I've heard, and this is just like giving half of it, I guess. And, Your Honor, that instruction was not given here. There were instructions specifically about counsel's argument not being evidence and specifically that law enforcement witnesses are not entitled to any additional credibility. With respect to, I think, the way that you've described instructions that are sometimes given in courts, I think that what that makes clear here is that there was no tendency to mislead and that there was no prejudice here. The court, in ruling on the request for this—the request for the instruction, it's important to the defendant, it's important to the government, it's okay for the jury to understand that. Whether or not that's right, that's something that a jury is going to recognize anyway. The jury, seeing that the government has come in, put in this effort to try this case, they recognize that it's important to the government, they recognize that it's important to the officers. So there's not a reason to believe that it's going to start tilting the scale in terms of what happens in this case. And that's especially true when we have a case where the evidence is very straightforward. Your Honors, unless there are any additional questions specifically on the closing argument issue, I'd like to transition to any questions related to the spoliation instruction and the request for an adverse inference instruction from defense. To begin, Your Honor, in the reply brief, they framed their argument very specifically in terms of jinx. And I want to be very clear about our position here. This was never something that was in the government's possession, so it was not something the government would have had an obligation to produce under jinx. Now, looking specifically at Johnson, we've taken the position that this specific portion of Johnson is dicta. But even if we are applying Johnson, the two prongs that it sets forth are not satisfied here. First, there's not evidence that this, that the government knew that this was relevant to the defense. It was redundant of other evidence. There was not a way, they did not recognize. Can you tell me what you think, assume for a minute, that either Johnson's dicta or it doesn't exist, either one doesn't matter to me. What do you think the, like, correct standard ought to be in a criminal case? I mean, if we were looking at a criminal case and we were not trying to parse language from that prior opinion, I'm not trying to throw away, you know, Supreme Court precedent, but what do you think the standard should be? I mean, do you think it's ever possible in a criminal case to have a spoliation instruction? I assume the answer to that is yes. The answer is yes, Your Honor. Okay, and then second, secondarily, like, what do you think the right standard is? And maybe start with non-electronically stored information and then tell me if it's different if it's electronically stored. So if it's a, you know, a piece of paper, start with that example, and then if you think it's somehow different for electronically stored information, and tell me why. Your Honor, I think that the relevant standard would need to come from the Supreme Court's decisions in Youngblood and Trivetta, which set out what the due process clause requires in this instance and then from Rule 16 in Jenks and what is required there. So, for example, if there was a situation under Youngblood where the government had acted in bad faith in destroying evidence or losing evidence, then in that situation, you could get what I'll call sort of a standard spoliation instruction that the jury can infer that the evidence, had it existed, would have proven the point of the person that wished to operate. So if there's a due process violation, whether that's Trivetta or Youngblood, then your point is the district court has some authority to dismiss the charges as a result or to give an instruction. Correct, Your Honor. Is that it? Is there anything short of that? So imagine a court said, I do not find Youngblood or Trivetta, the sort of dual standard, satisfied here for one reason or another. Is that the end of the game? Is the spoliation limited due process violation? Your Honor, I think the answer to that is no. But it would need to come from a violation that stems from either a failure to abide by Rule 16 or a failure to abide by Jenks. In other words, it would need to come from a specific discovery obligation that the government has. So if the government failed to abide by Rule 16 and ended up destroying evidence that it had in its possession, it was obligated to produce under Rule 16, in that situation the court could consider whether a spoliation instruction. And is that coming from the idea that in order to get a spoliation instruction, there has to be some duty? And that duty might come from Youngblood and Trivetta, right? But that duty might also come from somewhere else. But your questions or your answer seems to suggest that what we're really looking for is the violation of some existing duty that would be necessary to create a spoliation. I think that's right, Your Honor. I don't think that there would ever be a situation where a spoliation instruction is appropriate if there wasn't a prior preexisting duty to provide that. So to apply that specifically to this case here, the government never had these materials in their possession, and so there was never a duty to provide them. I want to be clear, the government had no objection to providing them. As soon as defense counsel asked for them, the government the next day reached out to the Franklin County Sheriff's Office and tried to get them. Unfortunately, at that time, they had already been destroyed. So the government would have been happy to produce these. But what is significant for our purposes here is that there was never a duty to collect and produce these. There was never a duty to sort of preserve, collect, and produce these. And then if there was a duty, and all of this might not be terribly relevant here, but I'm just curious, and you think about this a lot, so I'm asking. And then if there's a duty, you would agree it doesn't require bad faith, but it requires something more than negligence to get such a spoliation instruction, right? So in other words, if there's a duty, and you had it, and it was destroyed, if it was an accident, that probably, I assume in your mind, would not give rise to a spoliation instruction. But on the flip side, you don't have to show that it was destroyed with the purpose of depriving the defendant of the evidence, at least if it's non-electronic. Is that fair? Your Honor, let me respond to that question this way. Sure. To the extent that there is a due process violation, a spoliation instruction may be appropriate. Yep. To the extent there's a situation where the government has a duty to provide something, and fails to satisfy that duty, I think we acknowledge that there are situations where an adverse instruction may be appropriate. I am hesitant to sort of opine specifically on what state of mind the government would have needed to have in order for a spoliation instruction to be appropriate. I think that's something that may depend on the specifics of any particular case, and what is necessary in that particular case to ensure a fair trial. I'm not aware of either Supreme Court precedent or specific precedent from this court on that particular context, where Rule 16 evidence, for example, is not turned over. And so I'm not prepared to say specifically what the standard would be. It's not. That's why I'm asking. You can say, I don't know. That's a perfectly acceptable answer. People are very hesitant to do that at the lectern. I'm happy for you to say, I don't know. I just was curious if you had a follow-up. Your Honor, I'm happy to take that invitation and say I don't know specifically what the standard would be there. What I want to make clear for purposes of this case is where there is no pre-existing duty, the spoliation instruction is not appropriate here. And to the extent that the defense relies exclusively, and that's how I read the reply brief, exclusively on Jenks, Jenks does not apply here because the government never had this in its possession. The statute in Jenks is very, very clear about what is required, and because it was not in the possession of the United States, there was no Jenks obligation to produce it. And then once we go through the rest of the Johnson analysis, even assuming it applies, and we've argued that it does not, those two prongs are not satisfied. Can I ask you just a question about how this issue developed during the proceedings? Am I right that before, and I can ask your colleague this too, before the district court, the defendant's argument was a little bit different. It was that this was actually willful misconduct. I guess that there was a willful choice to preserve some forms of evidence, but not this form of evidence. And the district court said there was no support for that. That's correct, Your Honor. And then we got to the Jenks theory. That's correct, Your Honor. So Jenks was never raised below. What they said is that the Franklin County Sheriff's Office has, there's a protocol, there's a policy. Under that policy, certain things can be selected for longer preservation. That was not done here, and it should have been, and that was a willful violation. The court rejected that argument below, and we think this court should reject it as well. Okay. And from there, you said you had no duty. Why, because you don't control the Sheriff's Office? Why is it you had no duty? Specifically as to the audio recordings, Your Honor? Yeah. So the reason that we would not have had a duty is that they did not follow it in Rule 16. They did not follow it in Jenks because they were not in the possession of the United States. And there's no due process violation here, which is something that defense counsel acknowledged below. They admitted that there was no bad faith and that this was not exculpatory evidence. In fact, we think it was most likely inculpatory evidence. But because there's no due process issue and because it was not something that fell within the scope of Rule 16 and it was not something that fell within the scope of Jenks because it was not in our possession, that we didn't have a duty to collect and produce it. In Youngblood, the Supreme Court made very clear that there is no freestanding obligation to preserve, collect, and produce every piece of evidence that might be of sort of conceivable relevance. And so we want to be— This is not that type of evidence. This is not one of those things where it's far-fetched, right? Because this will be very helpful because the key to this case, in terms of defenses, was there a passenger in the car? And that passenger said, yes, I was, and that was my weapon. So this is not some ethereal type thing here, right? This is the piece de resistance, as the French would say. I don't think it's far afield, certainly, from the critical evidence in this case. But what I want to be clear is that when you look at the evidence in this case, even if you set apart all of the information that could have been gleaned from the audio recordings, all of the elements necessary to convict were there. The government had clear, straightforward evidence about the knowing possession of the firearm. And even if you consider the sort of specific pieces of Officer Hilton's testimony, even aside from the audio recordings of the dispatch, those were otherwise corroborated at trial. Is it possible to sit on the passenger seat based on how high the power was or tool? Your Honor, I can't say that it was impossible, but I think it was very unlikely. I know the answer is you can't tell, but you probably could. Now, one may be uncomfortable, but it wasn't the point. You could sit there, physically sit there, and normally you would say, that would be a strong argument, it's unlikely. But you have a witness who said, I was there. And I know you called him a liar and those kind of things like that, and that nobody should trust him and that kind of thing. But, you know, so it is what it is. But the whole surround, wasn't there some question about communication, whether someone said that, made some comment about whether or not somebody was in the car or whatever, that the audio may have helped? So the three issues, the three pieces of evidence that came in, that, as I read the record, the defense counsel was trying to oppose, with hopefully the use of the dispatch audio, was, one, that Mr. Martinez-Chavez wasn't fax speeding, two, that he turned the lights off in his car, that he blacked out his car as he was driving, and three, that he reached over after he had been pulled over and while Officer Hilton was sort of shining the light into his car. Again, I'll note, each of those pieces of evidence was corroborated by another piece of evidence. And to get to your point, Your Honor, about it is possible, it's feasible for somebody maybe to have been sitting on the seat in that car. Your Honor, I will acknowledge that it's not impossible. There might have been a way to do it. And if that was the only piece of evidence that the government had, maybe this is a tighter case. But that's not the situation we have here. We have testimony that is otherwise internally inconsistent, inconsistent with other evidence. He is outed as being a liar during the course of that testimony. And so his testimony is not credible. We have evidence from photographs and body cam making clear that it seems very unlikely, at the most, that anybody was sitting on that seat. And then you have the .22 caliber ammunition that matches the .22 caliber. I think you've answered. Before you go, just one question to be clear. It's somewhat of a counterfactual, but I want to make sure. Is it your position that a lot of these cases arise in normal state police enforcement, right? Correct. You're saying that they gather information, they have those things, and then that disappears. I'm not talking about this as counterfactual. It disappears. Then you take up the prosecution. You mean the federal government. Then you're never responsible at all having any liability to the fact that that's gone, that evidence is gone from a spoliation point. Is that your position that, well, we never had it in our hands. There's no jinx. There's no Rule 16. So are you saying that's your position that your hands are clean in any circumstances in terms of that being not preserved? But then they give you over what they did keep, and you use that to prosecute, but the other part is gone. You say, I never had that. Is that your position? Not quite, Your Honor. And I think the control in that case would be young blood and the bad faith argument. If local authorities have evidence and they destroy it in bad faith, then that would create a young blood problem, and you could have different kinds of relief. If there is evidence that would fall under Brady, that is exculpatory and that is material, that would also be a violation of the Due Process Clause, and there would be a possibility of relief there. But if the local authorities collect evidence, inadvertently lose something, and the government never has it, then there's not a jinx problem. And if they're not part of the prosecution team for purposes of determining, for example, Giglio or some of the other information the government might be obligated to disclose, then there may not be any other discovery violation as well. I think, to be clear in my response to that question, that hypothetical, that counterfactual, I think would be governed by young blood and trivetta and the Due Process Clause and specifically issues of bad faith or Brady that gets eliminated or destroyed. Thank you, Counsel. Thank you, Your Honor. Stratton, you have some time preserved. Thank you, Your Honor. I'd like to start, Judge Gregory, where you left off. I think the government's argument is surprising that they don't have any responsibility to preserve this information. This case was adopted federally while that information still existed. So Mr. Martinez-Chavez is arrested on New Year's Day. The case is indicted in March, so within the 180 days that these recordings still exist. The government is on notice that these recordings will be important because the government's own witnesses, Officer Poulin, other witnesses, state that they relied on hearing the dispatch recordings and writing their reports and in their actions. Officer Poulin testified that because he heard over dispatch that the car had blacked out. That's why he responded as he did. At JA 645, the government argued in the prior hearing that these officers were relying on the dispatch recordings in order to make their reports and in order to, as they testify. So the government knows that this is important and that this is out there. They can't immunize themselves by saying these are just state issues. By the time, while these recordings still exist, these officers become part of the prosecution team. They're government witnesses. The government has an obligation under Jenks to produce this information. I just want to make sure I understand what you think the relevance of the dispatch recordings would have been for the defendant's case. And I understood it the same way your colleague listed it out, that you thought the dispatch recordings might help to challenge officer credibility as to whether or not the defendant was speeding, whether or not he did the blackout, and then whether or not he reached toward the passenger seat. But I did not see anything in your brief saying they might have corroborated the existence of a passenger in the car. They corroborate, I think, or whatever the opposite of corroborate is, they indicate that the passenger could be there because I think the timing is important. That's essentially why the dispatch is most important, is to hear the timing of when these things occurred. When did Officer Hilton say the car blacked out? When did he call in to dispatch? With respect to how we can cross-reference this to the body cam. Again, we don't have any body cam, we don't have any dash cam. All of the important things that happened are coming directly from Officer Hilton, and he's the only one who's observing them. And so the dispatch recordings are certainly relevant to that and to that issue. I thought it was clear that there was a time when the officer lost a sight line to the car, and so it was possible, theoretically, that there had been someone in the car and he got out at that point. Yes, and I think when I say that, I think this initially became clear to the government that these would be important at the preliminary hearing where there was more of a dispute about that. But that's when the government is saying, yes, the officers relied on these dispatch recordings. But it's clear that the timing is still important, even apart from the government agrees that there was enough time for him to get out, I think. That's what they're saying. But with respect to the timing of the blacking out, was that really fleeing, or is that because he's just turning onto the street? Where his friend lives. And with respect to how much time is there between when he has Mr. Martinez Chavez in handcuffs and the duration when all these things are supposed to have occurred. So that is the relevance of the dispatch recordings from the defense perspective. Because this question of timing is a nice one that I think the jury isn't able to get at otherwise. So the idea is that the timing is important because it might shed light on officer credibility as to these arguably evasive maneuvers that would in turn show consciousness of guilt? Yes. Because whatever we think the standard is here, there's going to need to be some showing of prejudice. And it does, I guess I just want to give you a chance to respond to my concern on this, which is that this all seems sort of like tertiary evidence at most. I mean, the government's main case is he's sitting in the car, he's the owner of the car, the driver of the car. When stopped, the only occupant of the car and the gun is visible. And there's ammunition for both guns. And I guess their secondary case would be, and the one alibi witness who says otherwise is not credible. And then it's sort of icing on the cake, also like maybe he reached to the other seat. But it doesn't seem like it was exactly central to the government's case. I see my time is up. May I respond? I'd like to correct the record on a couple of points, first of all. It's not Mr. Martinez Chavez's car. It's the family car. It's registered to his wife. He does drive it. It's not the alibi witness's car. It's not the alibi witness's car. It's not Mr. Vallejo's car either. It's neither of their cars. But Mr. Martinez, there's a stipulation that he does drive it. The ammunition is .22 ammunition, but there's never anything that links it to these particular guns, and it's in the console. The case, as to your sort of broader question, the government's case is only as strong as its weakest element. And so the issue of knowledge, certainly these things that you point out with respect to is the gun in the car? Well, yes. But we also have Mr. Vallejo saying he just left it there. So that is something that the jury needs to look at. The jury needs to consider whether we're looking at this as from the totality of the evidence, and I think we should consider as well as we look at this the ways in which the government's improper arguments swayed the jury on these facts. But looking at the totality of the evidence, the jury just needs to get to reasonable doubt on this. And so is there reasonable doubt given this where a spoliation instruction would allow the defense to be able to say to the jury, you can assume that these recordings would have been beneficial to the defense? And one of the reasons that we have spoliation instructions is to prevent the spoliator from being able to benefit from their spoliation, right? And that's actually what the government was able to do in their closing, in their rebuttal closing. After the defense had made this argument about how there wasn't enough time, the government gets up and says, there's no evidence of that. There's no evidence of any time discrepancy. And the reason that there's no evidence of any time discrepancy is because the evidence that would have shown the time discrepancy was destroyed. And so that's exactly why we have spoliation instructions. Thank you, Your Honors. Thank you, Counsel. Thank you both. Mr. Arden, I return that you're not court appointed in the traditional sense, but thank you for taking the assignment from your normal duties. We appreciate that. And of course, Mr. Jones, you're recognized as your able representation in the United States. We'll come down to recounsel and proceed to the next case.
judges: Roger L. Gregory, Pamela A. Harris, Julius N. Richardson